No. 23,502.

SADIE·DODSON, *Appellant*, v. THE KANSAS CITY REFINING SALES
COMPANY, *Appellee*.

### SYLLABUS BY THE COURT.

COMPENSATION ACT—*Salesman Injured While Driving Motor Truck in Distributing Petroleum Products—Not Within Provisions of Workmen's Compensation Act.* The development of power in motor-truck engines by use of gasoline is not a "process" which brings the employment of one who drives a truck for a sales company engaged in distributing petroleum products within the section of the workmen's compensation act which embraces "all employments wherein a process requiring the use of any dangerous explosive or inflammable materials is carried on." (Laws 1917, ch. 226, § 1.)

Appeal from Wyandotte district court, division No. 3;· WILLIAM H. Mc-CAMISH, judge. Opinion filed February 11, 1922. Affirmed.

*J. H. Brady,* and *T. F. Railsback,* both of Kansas City, for the appellant.

*A. L. Berger,* of Kansas City, for the appellee.

The opinion of the court ·was delivered by

BURCH, J.: The action was one by a widow to recover compensation for death of her husband. A demurrer to the petition was sustained, and the plaintiff appeals.

The defendant is a sales company engaged in distributing gasoline and other petroleum products. In the conduct of its business it uses motor trucks. The deceased was a truck driver, and his injury was occasioned by collision between the truck he was driving and another truck operated by the defendant.

The workmen's compensation act applies to employment on, in or about specified localities—railway, factory, mine, laundry, natural gas plant, etc.—and to "all employments wherein a process requiring the use of any dangerous explosive or- inflammable materials is carried on." (Laws 1917, ch. 226, § 1.) The petition expressly disclaimed any purpose to predicate liability on conduct of business localized in an establishment. It was alleged the defendant's business involved operation of motor trucks on the streets of the city in transporting and delivering petroleum products in course of trade, and liability was rested on the distinguishing factor of process requiring use of dangerous, explosive, and inflammable material. This process consisted in development of power in the truck engines by use of gasoline.

The question presented is novel, and is ingeniously argued in the plaintiff's brief as follows:

"We have alleged that this was an employment wherein a process requiring the use of gasoline was carried on. This is exactly true. This automobile truck was propelled by an internal combustion engine and the fuel is gasoline, which (theoretically at least) is a high explosive and is inflammable. The gasoline of itself does not propel trucks, but without it the truck refuses to move. Intervening between the gasoline and the propulsion of the vehicle is a process whereby that gasoline is changed in its form and converted from one sort of substance into a volatile substance highly explosive, extremely inflammable, and by means of that process and the equipment it is harnessed and required to do useful rather than destructive work. One who would be engaged in blasting rocks by means of giant powder would be engaged in an employment wherein a process of using dangerous explosives is carried on. The process there would be the method of drilling the holes, filling them with powder, tamping it down and igniting the powder by the electric spark or the fuse, to procure the requisite explosion and its consequent result. In this case the process is parallel. Instead of drilling the holes we have them provided in the cylinder in the engine; instead of pouring gunpowder into them, we inject there a mixture of gasoline and air which has been processed through a clever device on the engine and made from a crude nonexplosive substance into a highly refined and dangerously explosive substance, and instead of tamping the powder with a tamping rod like a blaster, we compress it with the pistons of the engine and then ignite it by the spark, and when the explosion occurs, instead of tearing the earth asunder, it causes the engine to revolve by a process of mechanics. All through this matter there is a process which requires the use of gasoline, and without gasoline and without the treatment of the gasoline by the process, there is no energy. In this manner we convert the lifeless fluid, with its potential capacity, into an active dynamic force, and the change is wrought by a process."

Although the workmen's compensation act contains many definitions, the term "process" is not defined. It is to be construed, therefore, according to context and approved usage of language. Generally, "process" means method of operation or treatment in regular course of performing, producing, or making something. Immediately there come to mind the Bessemer process of making steel, Pasteurization, and other processes known by names of inventors; processes named from the substances used—the carbon process, the gelatine process; and a multitude of methods employed to produce useful results in arts, sciences, and industries. Should we speak of processing fruit, it is not likely we would be understood as referring to gasoline-car delivery from commission house or grocery store; and nobody would think of a cab company as processing a traveler from railroad station to hotel.

Turning to context, the statute states that the employments referred to are inherently dangerous and, from the nature, conditions, or means of prosecution, involve extraordinary risk to life and limb of employees. If the business of motor-vehicle transportation be extra hazardous, the peril does not lie in the method of developing power. That process is merely an incident, and cannot be regarded as stamping itself upon the whole business as a characteristic mark of danger. Motor-vehicle transportation was a well-known business when the statute was enacted, and had grown to enormous proportions when the sections under consideration were revised in 1917. Under the definitions of railway, factory, mine, quarry, electrical work, and engineering work, a great many kinds of employment are specified. (Laws 1917, ch. 226, § 2.) Numbers of them involve processes of various classes. The workmen's compensation acts of other states had placed operation of trucks among hazardous employments, and it is fair to assume that, if the legislature had intended to include so important and so extensive a business as motor-vehicle transportation within the provisions of the statute, it would have been more explicit.

The word "factory" is so defined that the term is limited to premises where power is used in manufacturing, including certain named premises. An obvious purpose of the provision relating to processes was to extend the act to manufactories not included in the class distinguished by the attribute, use of mechanical power. The provision may have other applications, but the court is not able to interpret it as embracing the employment in which the plaintiff's husband met death.

The judgment of the district court is affirmed.